FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 17, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CAROLINA P.,[1] | No. 1:19-cv-03107-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 12, 13 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 12, and grants Defendant's motion, ECF No. 13.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

ORDER - 4

1    If the severity of the claimant's impairment does not meet or exceed the

2 severity of the enumerated impairments, the Commissioner must pause to assess

3 the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4 defined generally as the claimant's ability to perform physical and mental work

5 activities on a sustained basis despite his or her limitations, 20 C.F.R. §

6 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7    At step four, the Commissioner considers whether, in view of the claimant's

8 RFC, the claimant is capable of performing work that he or she has performed in

9 the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

10 capable of performing past relevant work, the Commissioner must find that the

11 claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

12 performing such work, the analysis proceeds to step five.

13    At step five, the Commissioner considers whether, in view of the claimant's

14 RFC, the claimant is capable of performing other work in the national economy.

15 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

16 must also consider vocational factors such as the claimant's age, education, and

17 past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

18 adjusting to other work, the Commissioner must find that the claimant is not

19 disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

20

other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 11, 2016, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of March 11, 2016.  Tr. 184-92.  The application was denied initially and on reconsideration.  Tr. 113-19, 121-26.  Plaintiff appeared before an administrative law judge (ALJ) on December 6, 2017.  Tr. 46-85.  On June 13, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 11, 2016.  Tr. 18.  At step two, the ALJ found that Plaintiff had the following severe impairments: spina bifida, other disorders of the urinary tract, and obesity.  Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed

impairment. Tr. 19. The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can lift and/or carry 10 pounds occasionally and 10 pounds frequently. [Plaintiff] can stand and/or walk (with normal breaks) for a total of about two hours in an eight-hour workday and sit (with normal breaks) for a total of about six hours in an eight-hour workday. [Plaintiff] may require the use of a cane at times. [Plaintiff] can frequently stoop and kneel, can occasionally climb ramps and stairs, balance, crouch, and crawl, but can never climb ladders, ropes, and scaffolds. [Plaintiff] must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. [Plaintiff] must also avoid even moderate exposure to hazards, such as dangerous machinery, unprotected heights, etc. [Plaintiff's] duties should not take her more than a few minutes away from a bathroom, such as having to drive from one worksite to another. Finally, [Plaintiff] may be off task up to 10% over the course of an eight-hour workday.

Tr. 20.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as assembler, telephone information clerk, and document preparer. Tr. 28. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 11, 2016, though June 13, 2018, the date of the ALJ's decision. Tr. 29.

ORDER - 7

On March 15, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

3. Whether the ALJ conducted a proper step-three analysis.

ECF No. 12 at 2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 12 at 4-11. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The

claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 21-22.

### 1.  Activities of Daily Living

The ALJ found that Plaintiff's activities were inconsistent with the level of impairment Plaintiff alleged.  Tr. 21.  An ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ noted that Plaintiff reported her spina bifida, back pain, foot pain, numbness in her left leg, and chronic kidney infections caused disabling limitations in lifting, squatting, bending, reaching, walking, sitting, kneeling, climbing stairs, and getting along with others. Tr. 21 (citing Tr. 206, 255). The ALJ also noted that Plaintiff alleged her impairments affected her memory,[3] she lacked energy, Tr. 241, 255, she had difficulty controlling her bladder, Tr. 58, 61-62, 241, she had to self-catheterize every three to four hours, Tr. 62-63, 241, and she used a cane, Tr. 241, 256. Tr. 21. However, the ALJ observed that Plaintiff's daily activities included preparing her own meals, Tr. 252, doing laundry, Tr. 252, washing dishes,

---

[3] The ALJ cited to Plaintiff's adult function report when stating that Plaintiff alleged her impairments affected her memory. Tr. 21 (citing Tr. 255). However, a review of Plaintiff's adult function report shows she did not report that her memory was affected by her impairments. Tr. 255.

Tr. 69-70, cleaning, Tr. 251-52, 336, driving a car, Tr. 72, 253, and shopping in stores and by phone, Tr. 253, 336.  Tr. 19.  The ALJ also noted that Plaintiff reported watching television, Tr. 254, watching movies with her children, Tr. 70-71, playing on her iPad with her youngest child, Tr. 71, and doing coloring books with her youngest child, Tr. 72.  Tr. 21.  Moreover, the ALJ noted that Plaintiff reported she had no problem taking care of her personal needs.  Tr. 21 (citing Tr. 251, 336).  The ALJ reasonably concluded that these activities were inconsistent with the level of impairment Plaintiff alleged.  Tr. 21.

Plaintiff challenges the ALJ's finding by asserting the ALJ summarily concluded that Plaintiff's activities were inconsistent with her disability claim. ECF No. 12 at 4.  However, an ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.  Here, the ALJ identified Plaintiff's specific alleged impairments and noted specific activities that indicated Plaintiff was less limited than she alleged.  Tr. 21.  This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

2.  *Childcare Activities*

The ALJ discounted Plaintiff's symptom claims as inconsistent with the ability to care for her four children.  Tr. 21.  The ability to care for others without

ORDER - 12

help has been considered an activity that may undermine claims of totally disabling pain. *Rollins*, 261 F.3d at 857. For care activities to serve as a basis for the ALJ to discredit a claimant's symptom claims, the record must identify the nature, scope, and duration of the care involved, showing that the care is "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). Here, the ALJ noted that Plaintiff reported she took care of her children. Tr. 21 (citing Tr. 251). The ALJ also cited Plaintiff's testimony that she watched movies with her children and played with coloring books and her iPad with her youngest child. Tr. 21, 70-72. The ALJ did not further detail Plaintiff's childcare activities. Moreover, Plaintiff testified at the hearing and stated in her function report that both of her parents and her sister lived with Plaintiff and helped to take care of her children. Tr. 53, 75. While care activities may rebut a claimant's symptom claims, the record lacks substantial evidence to support the ALJ's decision that Plaintiff's care-taking activities were inconsistent with her symptom claims. This reason is not supported by substantial evidence.

This error is harmless because the ALJ identified other specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's

testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 3. Inconsistent with Objective Medical Evidence

The ALJ found that Plaintiff's symptom complaints were not supported by the objective medical evidence. Tr. 22-24. Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, the ALJ discussed Plaintiff's alleged symptoms that caused her to be unable to work, such as pain in her back and feet caused by spina bifida, urinary tract disorders, and obesity. Tr. 21-23. However, the ALJ found that despite the evidence demonstrating Plaintiff suffered from severe impairments, the objective medical evidence established Plaintiff "retain[ed] the capacity to function adequately to perform many basic activities associated with work." Tr. 27.

As to Plaintiff's claims of disabling pain and symptoms in her lumbar spine and feet related to her spina bifida, the ALJ determined that physical examinations

and objective medical tests did not support her allegations.  Tr. 21-24, 27; *see, e.g.,* Tr. 329 (March 2016: x-rays of Plaintiff's lumbar spine showed no evidence of acute fracture or dislocation, vertebral body height appeared well maintained, disc space heights were well maintained, and pedicles appeared intact, but there was spina bifida occulta involving the L5 and the sacrum); Tr. 327-28 (March 2016: treatment notes indicated Plaintiff's extremities had full range of motion and did not have any clubbing, cyanosis, or edema, but she had tenderness over the L5-S1 region and decreased range of motion of her lumbar spine); Tr. 327-29 (March 2016: treatment notes showed Plaintiff's right fifth toe hyperextended and was loose with missing bone and all of Plaintiff's toes had hammertoes on her right foot, but Plaintiff had an upright, non-shuffling, non-antalgic gait and her heel, toe, and tandem gait were normal, her sensation was subjectively intact to light touch and pinprick from L4-5 dermatomes and the entire left foot); Tr. 330 (April 2016: x-rays of Plaintiff's lumbar spine showed no evidence of dynamic instability and vertebral body heights were maintained); Tr. 332 (April 2016: an MRI of Plaintiff's lumbar spine showed incomplete fusion of the posterior elements of S1 through at least S3, which was consistent with spina bifida occulta and her spinal cord was tethered with the conus terminating near L4-5, but there was only minimal degeneration of Plaintiff's lower lumbar spine); Tr. 379 (May 2016: operative notes indicated Plaintiff underwent a right foot hallux interphalangeal

joint arthrodesis, second, third, and fourth proximal interphalangeal joint

arthrodesis, and fifth metatarsophalangeal joint capsulotomy, extensor tendon

lengthening, and V to Y skin plasty); Tr. 517 (June 2016: notes following

Plaintiff's foot surgery indicated she was doing well, but that she was having some

discomfort due to swelling when she tried to wear regular shoes); Tr. 336-38 (June

2016: upon examination less than a month after surgery on her right foot, Plaintiff

had an unstable station, antalgic gait, was using crutches due to recent surgery, was

unable to walk on her heels and toes, stand on a single leg, or hop, and only

performed one-half of a squat due to balance issues, but straight leg raise test was

negative to 90 degrees both in the sitting and supine positions, motor function in

her upper and lower extremities was normal and bilaterally symmetrical in all

major muscle groups except that her left foot dorsal flexion and plantar flexion was

reduced to four plus out of five and her right foot could not be tested because of

casting, sensory examination was intact to pinprick and light touch in all four

extremities, and deep tendon reflexes were normal and bilaterally symmetrical in

her biceps, brachial radialis, and patella tendon); Tr. 367, 390 (June 2016:

treatment notes indicated that although Plaintiff had spina bifida, she had full range

of motion of her back); Tr. 519 (September 2016: treatment notes indicated

Plaintiff's first through fourth toes maintained a rectus alignment on weightbearing

with no pain, but her fifth toe was dorsiflexed and medially deviated so that it sat

on top of the fourth toe; examination revealed Plaintiff had some tenderness to palpation at the tip of the left hallux); Tr. 519-20 (September 2016: x-rays of Plaintiff's left foot showed a fused hallux interphalangeal joint with a retained screw, with a screw head at the tip of the toe and no hardware failure or malposition; x-rays of Plaintiff's right foot showed a retained screw in the hallux and K wires in the second, third, and fourth proximal interphalangeal joints and these all maintained good alignment with evidence of healing, but Plaintiff's fifth toe was significantly dorsiflexed with medial deviation); Tr. 493, 520 (October 2016: Plaintiff underwent a left foot partial hardware removal and a right fifth metatarsophalangeal joint capsulotomy with overlapping fifth toe repair); Tr. 520-21 (October 2016: treatment notes indicated Plaintiff was healing well after surgery and her pain medication was working well to control her pain); Tr. 481 (October 2016: physical therapy treatment notes showed "[Plaintiff] reporting that her back feels 'fine' and reports 0/10 pain," and "[n]o pain complaints throughout"); Tr. 522 (November 2016: treatment notes indicated Plaintiff had been doing very well since her foot surgery and she was pleased with her progress); Tr. 580, 588 (March 2017: Plaintiff underwent a L4-5 laminectomy for spinal cord detethering); Tr. 580 (March 2017: an MRI of Plaintiff's lumbar spine following surgery showed operative changes related to lipomyelomeningocele repair and cord detethering, and a dorsal epidural collection from L3 through L5

which ventrally displaced the cord, but the amount of the dural compression was minimal to mild and there was otherwise no significant abnormality and no compressive lesion or cord signal abnormality); Tr. 712 (March 2017: a CT of Plaintiff's lumbar spine showed no significant degenerative changes through the lumbar spine and no acute abnormalities, but there was exuberant sclerosis of the SI joints most predominant on the right, likely related to mechanical changes, and it was noted that the findings were related to spinal dysraphism); Tr. 680-81 (June 2017: treatment notes from three months after Plaintiff's back surgery noted her "back pain has improved," Plaintiff described the pain as a four out of 10 in severity, and her gait was intact); Tr. 704-05 (June 2017: an MRI of Plaintiff's lumbar spine did not reveal any new fluid collections and when compared with her March 2017 MRI, it was otherwise unchanged in appearance, including low lying cord with lipomas and termination as a lipomyelocele); Tr. 790 (July 2017: treatment notes showed that Plaintiff was ambulatory); Tr. 877 (September 2017: x-rays of Plaintiff's right foot showed postsurgical changes involving the first, second, third, and fourth toes and there was soft tissue swelling about the mid to distal forefoot; otherwise the osseous, joint space, and soft tissue structures were "radiographically unremarkable").

As to Plaintiff's alleged limitations related to her urinary tract disorders, the ALJ acknowledged that treatment notes throughout the record consistently showed

Plaintiff struggled with recurrent urinary tract infections in 2016 and 2017, and she was self-catheterizing every four hours. Tr. 22, 25 (citing Tr. 342, 565, 650-52, 680, 785, 790, 792). However, the ALJ noted that Plaintiff underwent a hand-assisted laparoscopic left nephrectomy in December 2016, and urodynamics in March 2017, and recent treatment notes from July 2017 indicated Plaintiff was nontoxic appearing, her physical examination was otherwise unremarkable with negative labs, and she was hemodynamically stable without evidence of sepsis or instability. Tr. 22 (citing Tr. 790). As to Plaintiff's alleged limitations related to her obesity, the ALJ recognized that although treatment notes indicated Plaintiff was obese with a Body Mass Index (BMI) of at least 34, upon examination in June 2016 Plaintiff sat comfortably during a consultative interview, was able to stand up from a chair when she could push off on the arms of the chair, and was able to get on and off the examination table without help. Tr. 22-23 (citing Tr. 337, 384, 415, 1019, 1026, 1032).

Plaintiff argues that "the ALJ's findings often characterize irrelevant medical findings as conflicting with inapposite symptom allegations." ECF No. 12 at 9. However, as discussed *supra*, the ALJ provided citations to the record to support his specific findings that Plaintiff's disability symptom claims were not supported by the objective medical evidence. Tr. 22-24. Based on this record, the ALJ reasonably concluded that the objective medical evidence did not support the

level of impairment alleged by Plaintiff.  Tr. 22-24.  The ALJ's finding is

supported by substantial evidence and was a clear and convincing reason, in

conjunction with Plaintiff's daily activities and improvement with treatment, *see*

*supra* and *infra*, to discount Plaintiff's symptom complaints.

　　　4. *Improvement with Treatment*

　　　The ALJ found that Plaintiff's symptom testimony was inconsistent with the

level of improvement she showed following her foot surgeries and back surgery,

and effective pain control with the use of medications.  Tr. 22-24.  The

effectiveness of treatment is a relevant factor in determining the severity of a

claimant's symptoms.  20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc.*

*Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled

with medication are not disabling for purposes of determining eligibility for

benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035,

1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's

complaints of debilitating pain or other severe limitations).  In her opening brief,

Plaintiff did not challenge this reason articulated by the ALJ for discounting her

symptom complaints, thus any challenge is waived.  *Kim v. Kang*, 154 F.3d 996,

1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically

and distinctly argued" in the party's opening brief).

ORDER - 20

Despite Plaintiff's waiver, the Court has reviewed the ALJ's finding. The ALJ observed that treatment records and examination findings from after Plaintiff's foot surgeries showed that her symptoms had improved. Tr. 22-24; *see, e.g.,* Tr. 379 (May 2016: Plaintiff underwent a right foot hallux interphalangeal joint arthrodesis, second, third, and fourth proximal interphalangeal joint arthrodesis, and fifth metatarsophalangeal joint capsulotomy, extensor tendon lengthening, and V to Y skin plasty); Tr. 517 (June 2016: notes following Plaintiff's foot surgery indicated she was doing well, but she was having some discomfort due to swelling when she tried to wear regular shoes); Tr. 493, 520 (October 7, 2016: Plaintiff underwent a left foot partial hardware removal and a right fifth metatarsophalangeal joint capsulotomy with overlapping fifth toe repair); Tr. 520 (October 13, 2016: treatment notes indicated Plaintiff was healing well after surgery); Tr. 521 (October 20, 2016: treatment notes stated Plaintiff had been doing well and "not having much pain"); Tr. 522 (November 17, 2016: treatment notes indicated Plaintiff had been doing very well since her foot surgery and she was "pleased with her progress.").

The ALJ also observed that treatment records and examination findings from after Plaintiff's back surgery showed that her symptoms had improved. Tr. 24; *see, e.g.,* Tr. 580, 588 (March 20, 2017: Plaintiff underwent a L4-5 laminectomy for spinal cord detethering); Tr. 680-81 (June 2017: treatment notes from three

months after Plaintiff's back surgery showed "[o]verall, she has experienced improvement in her low back pain and recovering well," she described the pain as a four out of 10 in severity, her gait within the examination room was intact, and she was taking only ibuprofen for pain); Tr. 704-05 (June 2017: an MRI of Plaintiff's lumbar spine did not reveal any new fluid collections and when compared with her post-surgery MRI from March 2017, it was otherwise unchanged in appearance, including low lying cord with lipomas and termination as a lipomyelocele); Tr. 790 (July 2017: treatment notes indicated that Plaintiff was ambulatory).

Based on this record, the ALJ reasonably concluded that the improvement Plaintiff reported in her symptoms after her back and foot surgeries, along with pain medication, supported a finding that Plaintiff was capable of sedentary work with additional functional limitations, which was inconsistent with Plaintiff's subjective symptom claims of total disability. Tr. 22-24. The ALJ's finding is supported by substantial evidence.

**B.     Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Jessica Bury, M.D., Jared Clifford, DPM, Norman Shively, M.D., Michelle Chowdhary, M.D., Emily Thach, PA-C, and William Drenguis, M.D.  ECF No. 12 at 11-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. § 404.1513 (2013).[4] However, an ALJ is required to consider evidence from non-acceptable medical sources. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 20 C.F.R. §

---

[4] For cases filed prior to March 27, 2017, the definition of an acceptable medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, are located at 20 C.F.R. § 404.1513(d) (2013).

ORDER - 24

404.1513(d) (2013). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Bury

Jessica Bury, M.D., Plaintiff's treating gynecologist, completed a medical report on July 26, 2016 and diagnosed Plaintiff with spina bifida with bladder, back, and leg complications, vesicoureteral reflux, congenitally atrophic/marginally functional kidney, and malformation of her right foot/toes. Tr. 462-63. Dr. Bury opined that due to low back, leg, and foot pain, Plaintiff had to lie down for more than two hours during the day depending on activity. Tr. 462. She opined that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate. Tr. 463. Dr. Bury stated that Plaintiff would miss an average of four or more days of work per month due to illness or pain, medical appointments and procedures, medical tests, imaging, consults with specialists, and physical therapy. Tr. 463. She opined that Plaintiff's "best prognosis is a stable chronic illness that allows her to perform her ADLs and interact with her family and start walking." Tr. 462. Dr. Bury stated that Plaintiff's limitations had existed since at least June 2006. Tr. 463.

The ALJ gave Dr. Bury's opinion little weight. Tr. 25. Because Dr. Bury's opinion was contradicted by the nonexamining opinion of Norman Staley, M.D.,

Tr. 106-08, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Bury's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ determined that Dr. Bury's opinion was not supported by the record. Tr. 25. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Here, the ALJ found that although Dr. Bury opined that Plaintiff would have to lie down during the day for two or more hours "depending on activity due to low back, leg, and foot pain," Tr. 462, treatment notes from June 2017, after Plaintiff's back surgery, indicated that Plaintiff's back pain had improved. Tr. 25 (citing Tr. 680). The ALJ also cited treatment notes that indicated Plaintiff was doing well after each foot surgery. Tr. 25 (citing Tr. 517, 520-22). The ALJ stated that treatment notes from June 2017 showed Plaintiff's gait within the examination room was intact, and treatment notes from July 2017 indicated Plaintiff was ambulatory. Tr. 25 (citing Tr. 681, 790).

Plaintiff argues the ALJ erred in evaluating Dr. Bury's opinion because the ALJ took reports of Plaintiff's improvement out of context and ignored the overall diagnostic picture. ECF No. 12 at 12. Plaintiff also contends the records cited by the ALJ "*at most* would support a conclusion there is some evidence that conflicts

with Dr. Bury's opinions." ECF No. 12 at 13. However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Based on this record, the ALJ reasonably concluded that Dr. Bury's opinion was unsupported by the record as a whole. The lack of record support for Dr. Bury's opined limitations was a specific and legitimate reason supported by substantial evidence for rejecting her opinion.

### 2. Dr. Clifford

Jared Clifford, DPM, Plaintiff's treating podiatrist, completed a medical report on September 19, 2016 and diagnosed Plaintiff with spina bifida, pes cavus, and foot joint contractures. Tr. 467-68. Dr. Clifford opined that Plaintiff did not have any physical or mental conditions that were reasonably likely to cause pain. Tr. 467. He noted that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate. Tr. 468. He stated that Plaintiff would likely miss an average of two days of work per month due to pain in her feet from prolonged weight bearing. Tr. 468. However, Dr. Clifford opined that "[a] more sedentary job would be fine." Tr. 468.

The ALJ gave Dr. Clifford's opinion little weight. Tr. 25. Because Dr. Clifford's opinion was contradicted by the nonexamining opinion of Dr. Staley, Tr.

106-08, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Clifford's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ determined that Dr. Clifford's opinion was not supported by the record. Tr. 25-26. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Here, the ALJ found that although Dr. Clifford opined that Plaintiff would likely miss an average of two days of work per month due to pain in her feet from prolonged weight bearing, Tr. 468, treatment notes indicated that Plaintiff was doing well after each foot surgery. Tr. 25-26; *see, e.g.,* Tr. 517 (June 2016: notes following Plaintiff's foot surgery indicated she was doing well, but she was having some discomfort due to swelling when she tried to wear regular shoes); Tr. 520 (October 13, 2016: treatment notes indicated Plaintiff was healing well after foot surgery); Tr. 521 (October 20, 2016: treatment notes stated Plaintiff had been doing well after foot surgery and "not having much pain"); Tr. 522 (November 17, 2016: treatment notes indicated Plaintiff had been doing very well since her foot surgery and she was "pleased with her progress."). Further, the ALJ cited treatment notes from June 2017 and July 2017 that showed Plaintiff's gait within

the examination room was intact and Plaintiff was ambulatory.  Tr. 26 (citing Tr. 681, 790).

Plaintiff points to evidence that she argues substantiates her symptoms.  ECF No. 12 at 16-17.  Specifically, Plaintiff asserts the ALJ's citations to treatment notes showing that she was doing well after each foot surgery failed to account for the fact that Dr. Clifford wrote those notes himself but still assessed disabling limitations.  ECF No. 12 at 16-17.  However, Dr. Clifford assessed Plaintiff's disabling limitations on September 19, 2016, prior to Plaintiff's bilateral foot surgery on October 7, 2016.  Tr. 467-68, 520.  Dr. Clifford's treatment notes from October 13, 2016, in a follow up examination after her bilateral foot surgery, showed Plaintiff was "healing well," she had "been doing well," pain medication was working to control her pain, and other than a visit to the emergency department for a bandage change, she had "been doing fine."  Tr. 520.  One week later, Dr. Clifford's treatment notes in a follow up visit to remove her sutures showed Plaintiff had been "doing well, and not having much pain."  Tr. 521.  On November 17, 2016, Dr. Clifford reported that Plaintiff had "healed well" after her foot surgery and was "pleased with her progress."  Tr. 522.  Based on this record, the ALJ reasonably concluded that Dr. Clifford's opinion was unsupported by the record as a whole.  The lack of record support for Dr. Clifford's opined limitations

was a specific and legitimate reason supported by substantial evidence for rejecting his opinion.

### 3. Dr. Shively

Norman Shively, M.D., Plaintiff's treating urologist, completed a medical report on October 18, 2016 and noted that Plaintiff may require removal of her left kidney. Tr. 469-70. Dr. Shively opined that Plaintiff did not have any physical or mental conditions which were reasonably likely to cause pain, and she did not have to lie down during the day. Tr. 469. Dr. Shively also noted that work on a regular and continuous basis would not cause Plaintiff's condition to deteriorate. Tr. 470. He opined that Plaintiff would miss an average of one day of work per month due to urinary tract infections. Tr. 470. He stated that Plaintiff's limitations had existed since at least June 2006. Tr. 470.

The ALJ gave Dr. Shively's opinion little weight. Tr. 26. Because Dr. Shively's opinion was contradicted by the nonexamining opinion of Dr. Staley, Tr. 106-08, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Shively's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ determined that Dr. Shively's opinion was not supported by the record. Tr. 26. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149. An ALJ may discredit physicians' opinions

that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Here, the ALJ determined that although Dr. Shively opined that Plaintiff would miss an average of one day of work per month due to urinary tract infections, treatment notes from July 2017, after removal of her left kidney, showed that Plaintiff had no evidence of sepsis or instability, she was nontoxic appearing, her physical examination was unremarkable, and her laboratory results were negative. Tr. 26 (citing Tr. 790).

Plaintiff argues that the ALJ erred in evaluating Dr. Shively's opinion because the ALJ took the cited treatment notes out of context. ECF No. 12 at 17. However, while the cited treatment notes showed that Plaintiff had a urinary tract infection, the treatment notes also reported there was no need for further labs, medications, hydration, or hospitalization given Plaintiff's "unremarkable labs and stability." Tr. 790. The ALJ reasonably concluded that Dr. Shively's opinion that Plaintiff would miss an average of one day of work per month due to urinary tract infections was unsupported by the record. This was a specific and legitimate reason supported by substantial evidence for rejecting his opinion.

*4. Dr. Chowdhary*

On March 24, 2017, Michelle Chowdhary, M.D., Plaintiff's treating provider, noted that Plaintiff was born with spina bifida and she had back surgery on March 20, 2017. Tr. 574-76. Dr. Chowdhary opined that Plaintiff was severely

limited and unable to lift at least two pounds or unable to stand or walk. Tr. 575.

She also noted that for three months following her back surgery, Plaintiff must

avoid lifting more than 10 pounds, and avoid prolonged standing, bending, and

repetitive motion. Tr. 574. She opined that Plaintiff's condition limited her ability

to work, look for work, or prepare for work. Tr. 574. Dr. Chowdhary opined that

Plaintiff's limitations were not permanent and would only last for three months

after her back surgery. Tr. 575. On March 27, 2017, Dr. Chowdhary cosigned

Plaintiff's discharge summary after her back surgery and opined that Plaintiff

could not do any heavy lifting greater than 15 pounds until cleared by her

neurosurgeon. Tr. 582-83. Dr. Chowdhary also opined that Plaintiff could not

play any sports, twist, pull, bend, or operate heavy machinery until cleared by her

neurosurgeon. Tr. 582.

The ALJ gave Dr. Chowdhary's opinion little weight. Tr. 26. Because Dr.

Chowdhary's opinion was contradicted by the nonexamining opinion of Dr. Staley,

Tr. 106-08, the ALJ was required to provide specific and legitimate reasons for

discounting Dr. Chowdhary's opinion. *Bayliss*, 427 F.3d at 1216.

### a. Temporary Condition

The ALJ discounted Dr. Chowdhary's assessments because they were

temporary work restrictions. Tr. 26. Temporary limitations are not enough to

meet the durational requirement for a finding of disability. 20 C.F.R. §

404.1505(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). The ALJ noted that Dr. Chowdhary's opinions only addressed temporary restrictions following Plaintiff's back surgery. Tr. 26. First, in her March 24, 2017 medical report, Dr. Chowdhary opined that Plaintiff's limitations were not permanent and would only last for three months after her back surgery. Tr. 575. Next, in the March 27, 2017 discharge summary, Dr. Chowdhary noted that Plaintiff had restrictions only until cleared by her neurosurgeon. Tr. 582-83. The ALJ reasonably concluded that Dr. Chowdhary's opinions were only temporary work restrictions. This was a specific and legitimate reason to discount her opinions.

### b. Internally Inconsistent

The ALJ also discounted Dr. Chowdhary's opinions because he found them to be inconsistent with each other. Tr. 26. An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ is not obligated to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti*, 533 F.3d at 1041. The ALJ may properly reject a

medical opinion that gives no explanation for deviating from the provider's prior medical opinion. *See Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991). The ALJ found inconsistencies in Dr. Chowdhary's assessed lifting limitations. Tr. 26. In her March 24, 2017 opinion, Dr. Chowdhary limited Plaintiff to lifting no more than 10 pounds while also noting that Plaintiff would be unable to lift at least two pounds. Tr. 574-75. In Plaintiff's discharge summary, Dr. Chowdhary opined that Plaintiff could not do any heavy lifting greater than 15 pounds. Tr. 582. The ALJ also noted inconsistencies in Dr. Chowdhary's assessed standing and walking limitations. Tr. 26. In her March 24, 2017 opinion, Dr. Chowdhary stated that Plaintiff must avoid prolonged standing, bending, and repetitive motion, but she also opined that Plaintiff was unable to stand or walk. Tr. 574-75. In her opinion three days later, Dr. Chowdhary opined that Plaintiff could not play any sports, twist, pull, bend, or operate heavy machinery until cleared by her neurosurgeon, but was silent as to any restrictions on standing or walking. Tr. 582.

Plaintiff argues that the "slight" discrepancy in Dr. Chowdhary's assigned lifting restrictions was "essentially immaterial." ECF No. 12 at 18. The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not

reverse the ALJ's decision). The ALJ's determination that there were inconsistencies in Dr. Chowdhary's opinions was a specific and legitimate reason to reject Dr. Chowdhary's opinions.

5. *Ms. Thach*

On January 11, 2018, Emily Thach, PA-C, completed a medical report and noted that Plaintiff had back pain and lower extremity weakness, pain, and numbness. Tr. 44-45. Ms. Thach opined that Plaintiff would have to lie down during the day, as needed, due to back pain. Tr. 44. She reported that Plaintiff's back pain, numbness, and leg pain were likely to persist and Plaintiff's back surgery "was done to halt progression of disease." Tr. 45. Ms. Thach also opined "work that requires activity that causes pain" on a regular and continuous basis would cause Plaintiff's condition to deteriorate. Tr. 45. She stated that Plaintiff would likely miss some work due to medical impairments "[a]s needed for pain and amount of activity required." Tr. 45. The ALJ did not discuss Ms. Thach's 2018 opinion as it was not provided to the ALJ within five business days of the date of the scheduled hearing. Tr. 15 (citing 20 C.F.R. § 404.935(a)).

a. Additional Evidence Submitted to the ALJ

Plaintiff argues the ALJ erred by declining to consider Ms. Thach's 2018 opinion. ECF No. 12 at 18-20. If a claimant seeks to have written evidence considered at the hearing, then the claimant must submit or inform the ALJ about

the evidence no later than five business days before the date of the scheduled hearing. 20 CFR § 404.935(a). If the claimant misses this deadline but submits or informs the ALJ about written evidence before the hearing decision is issued, the ALJ will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier. 20 CFR § 404.935(b). Here, Plaintiff contends that although the ALJ was not notified of Ms. Thach's 2018 opinion prior to the hearing, the ALJ erred in declining to accept the evidence because the record was already held open due to a delay from a different source that had been diligently and timely requested. ECF No. 12 at 19. Plaintiff simply asserts that Ms. Thach's report was not generated until more than a month after the hearing, but points to no unusual, unexpected, or unavoidable circumstance beyond Plaintiff's control that prevented her from informing the ALJ about the evidence earlier. ECF No. 12 at 19; *see* 20 C.F.R. § 404.935(b). Plaintiff failed to comply with Social Security Administration regulations when submitting Ms. Thach's opinion and the ALJ did not err by declining to admit her opinion into evidence. *See* 20 C.F.R. § 404.935(a).

b.  Additional Evidence Submitted to the Appeals Council

Plaintiff argues the Appeals Council incorrectly determined that Ms. Thach's 2018 opinion was not material, and therefore erroneously failed to consider the additional evidence.  ECF No. 12 at 20 (citing Tr. 1-2).  The Social Security regulations permit a claimant to submit additional evidence to the Appeals Council.  20 C.F.R. § 404.900(b) (2017).  The Appeals Council is required to consider new and material evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision" and "there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5) & (b) (2017).  Evidence that meets the criteria is to be considered by the Appeals Council and incorporated into the administrative record as evidence, "which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  Pursuant to agency policy, a copy of evidence *not* meeting the criteria and therefore not considered by the Appeals Council is nonetheless included as part of the certified administrative record filed with this Court, although by law, the rejected evidence falls outside the scope of the Court's substantial-evidence review.  *See* Soc. Sec. Admin. Hrgs., Appeals, & Litig. Law Man. ("HALLEX"), HALLEX § I-3-5-20, available at

https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html (addressing how additional evidence is to be handled).

Although Ms. Thach's 2018 opinion concerning Plaintiff's back and lower extremity pain does relate to the period at issue, this evidence is not material.  *See* Tr. 2 (The additional evidence "does not show a reasonable probability that it would change the outcome of the decision.").  New evidence is material if it creates a reasonable possibility that the outcome of the case would be different. *Staley v. Massanari*, 17 F. App'x 609, 610 (9th Cir. 2001) (interpreting Appeals Council's decision and citing *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)).  Even if this evidence was fully credited, the evidence does not show a reasonable probability that it would change the outcome of the decision because Ms. Thach provided only vague functional limitations.  *See Bray*, 554 F.3d at 1228 (A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (an ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity.")  Ms. Thach opined "work that requires activity that causes pain" on a regular and continuous basis would cause Plaintiff's condition to deteriorate.  Tr. 45.  However, Ms. Thach did not describe what type of work would require activity that causes pain.  Further, Ms. Thach opined that

Plaintiff would likely miss some work due to medical impairments "[a]s needed for pain and amount of activity required." Again, she did not provide details as to how often Plaintiff would likely miss work. Plaintiff fails to show a reasonable probability that this additional evidence would change the outcome of the decision. The Appeals Council did not err in declining to consider and exhibit the additional evidence.

6. *Dr. Drenguis*

Dr. Drenguis, examining physician, conducted a physical evaluation of Plaintiff on June 15, 2016 and noted that Plaintiff had foot surgery two weeks earlier. Tr. 335-39. He diagnosed Plaintiff with spina bifida with continued low back pain, left leg sciatic symptoms, and congenital deformities of the feet requiring surgical correction. Tr. 338. He also diagnosed Plaintiff with a neurogenic bladder with frequent infections with stress incontinence. Tr. 338. Dr. Drenguis noted that Plaintiff had to self-catheterize every four hours. Tr. 338. He opined that Plaintiff's maximum standing and walking capacity was at least two hours and her maximum sitting capacity was at least four hours due to her spina bifida. Tr. 338. He opined that her maximum lifting and carrying capacity was 10 pounds both occasionally and frequently due to her spina bifida and urinary stress incontinence. Tr. 338. He opined that Plaintiff could only occasionally climb, balance, kneel, crouch, and crawl due to her spina bifida. Tr. 338. Dr. Drenguis

noted that Plaintiff was obese but sat comfortably during the interview, she was able to stand up from a chair when she could push off on the arms of the chair, and she was able to get on and off the examination table without help. Tr. 337. He noted that Plaintiff's station was unstable, her gait was antalgic, and she was using crutches due to her recent foot surgery. Tr. 337. He found that Plaintiff could not walk on her heels or toes, could not stand on a single leg, could not hop, and she only performed one-half of a squat because of balance issues. Tr. 337. Dr. Drenguis noted that Plaintiff's straight leg raise test was negative to 90 degrees, both in the sitting and supine positions. Tr. 337. He reported that Plaintiff's motor function in her upper and lower extremities was normal and bilaterally symmetrical in all major muscle groups except that her left foot dorsal flexion and plantar flexion was reduced to four plus out of five and that her right foot could not be tested because of casting. Tr. 337. Finally, Dr. Drenguis reported that Plaintiff's sensory examination was intact to pinprick and light touch in all four extremities and her deep tendon reflexes were normal and bilaterally symmetrical in her biceps, brachial radialis, and patella tendon. Tr. 338.

The ALJ gave Dr. Drenguis' opinion little weight. Tr. 25. Because Dr. Drenguis' opinion was contradicted by the nonexamining opinion of Dr. Staley, Tr. 106-08, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Drenguis' opinion. *Bayliss*, 427 F.3d at 1216.

ORDER - 40

### a. Frequency of Examination

The ALJ discounted Dr. Drenguis' opinion on the ground that he only examined Plaintiff once. Tr. 25. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 404.1527(c). However, the fact that an evaluator examined Plaintiff one time is not a legally sufficient basis for rejecting the opinion. The regulations direct that all opinions, including the opinions of examining providers, should be considered. 20 C.F.R. § 404.1527(b), (c). The Court notes the ALJ's rationale is inconsistent with the ALJ giving significant weight to Dr. Staley, who had no treatment relationship with Plaintiff. Tr. 24. This was not a specific and legitimate reason to discount Dr. Drenguis' opinion. However, such error is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Drenguis' opinion. *Molina,* 674 F.3d at 1115.

### b. Temporary Condition

The ALJ discounted Dr. Drenguis' opinion because he examined Plaintiff only two weeks after Plaintiff had foot surgery. Tr. 25. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 404.1505(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than 12 months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians'

short-term excuse from work was not indicative of "claimant's long-term functioning"). Dr. Drenguis reported that Plaintiff was "presently wearing a cast and using crutches because of this recent surgery." Tr. 336. He also noted that Plaintiff's motor function in her right foot and range of motion in her right ankle could not be tested because of her cast. Tr. 337. Plaintiff argues that Dr. Drenguis did not rely on Plaintiff's foot impairments to determine her sitting restrictions, "so the recency of her surgery is irrelevant to that limitation." ECF No. 12 at 20. However, Dr. Drenguis also assessed restrictions related to standing, walking, climbing, balancing, kneeling, crouching, and crawling, and the ALJ rejected Dr. Drenguis' entire opinion in part due to the recency of her foot surgery. Tr. 25, 338. This was a specific and legitimate reason to discount Dr. Drenguis' opinion.

c. Inconsistent with Examination

The ALJ determined that Dr. Drenguis' opinion that Plaintiff could only sit for four hours was inconsistent with Dr. Drenguis' own examination of Plaintiff. Tr. 25. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.

ORDER - 42

2003).  The ALJ noted that Dr. Drenguis reported Plaintiff sat comfortably during the interview.  Tr. 25 (citing Tr. 337).  The ALJ also cited Dr. Drenguis' note that Plaintiff was able to stand up from a chair when she could push off on the arms of the chair and she was able to get on and off the examination table without help.  Tr. 25 (citing Tr. 337).  Dr. Drenguis' examination results showed Plaintiff had negative straight leg raise tests both in the sitting and supine positions, and she demonstrated good motor function in her flexors and extensors of the hips and knees.  Tr. 337.

Plaintiff asserts that the ALJ failed to explain how Dr. Drenguis' opinion restricting Plaintiff to sitting for only four hours was inconsistent with her successful competition of parts of the examination.  ECF No. 12 at 21.  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan*, 169 F.3d at 599-600.  Where, as here, evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400 F.3d at 679; *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence).  The ALJ provided specific and legitimate reasons to discount Dr. Drenguis' opined limitations.

**C.     Step Three**

Plaintiff contends the ALJ erred by finding that she did not met Listing 11.08B at step three.  ECF No. 12 at 18; ECF No. 14 at 10.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments "describes for each of the major body systems impairments [which are considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525.  To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim.  20 C.F.R. § 404.1525(d).  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  The claimant bears the burden of establishing he meets a listing.  *Burch*, 400 F.3d at 683.

Here, Plaintiff relies entirely on the argument that the ALJ erred in evaluating Dr. Chowdhary's medical opinion.  ECF No. 12 at 18; ECF No. 14 at 10.  Given that the Court has found no error in the ALJ's evaluation of Dr. Chowdhary's medical opinion, Plaintiff has not established that the ALJ erred in determining that Plaintiff did not meet Listing 11.08B at step three.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 17, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE